TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

............Suula............, Plaintiff(s)

v.

............AshaTech, Inc. et al............, Defendant(s)

## SUMMONS

To the above-named Defendant: AshaTech Inc.

You are hereby summoned and required to serve upon E. Michael Kagan .............................

.................................. plaintiff's attorney, whose address is 10 Derne St., .................

Attleboro MA 02703 ............................, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at 200 Trade Center

Woburn MA 01801 .................................. either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at ..................................................................

the ............................................... day of ...................................................

............................, in the year of our Lord ...........................................

........................................... Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

FORM NO. SUP. — 001

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

MIDDLESEX, ss

................ Suys ................, Plaintiff(s)

v.

................ BlvaTech Inc ................, Defendant(s)

## SUMMONS

To the above-named Defendant: Joe Johnson

You are hereby summoned and required to serve upon S. Michael Kain ................ plaintiff's attorney, whose address is 1 Oxbow Hill, Attleboro MA 02703 ................, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at 200 Trade Center, Woburn MA 01801 ................ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at ................

the ................ day of ................

................, in the year of our Lord ................ .

................................................
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

......MIDDLESEX...... , ss

..........Sujic.......... , Plaintiff(s)

v.

..........BlvnTech Inc.......... , Defendant(s)

## SUMMONS

To the above-named Defendant: Steve Cyr

You are hereby summoned and required to serve upon ..S. Michael Kou........ plaintiff's attorney, whose address is ..Kollox 1185....... Attleboro MA 02703......., an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at ..200 Trade Center Woburn, MA 01801.......... either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at ..........................................................................

the .................................................. day of ...................................................

.................., in the year of our Lord ...................................... .

.................................................. 
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPARTMENT
                                                  OF THE TRIAL COURT

                                                  C.A. NO.

CHEVONNE SIUPA,

    Plaintiff,

v.                                                10-0611

ASTRA TECH, INC., a Delaware corporation;
JOE JOHNSON, an individual; STEVE CYR,            **COMPLAINT FOR SEXUAL**
an individual,                                    **HARASSMENT, RETALIATION, WAGES**
                                                  **OWED**
    Defendants.

## FACTS

1.    Plaintiff Chevonne Siupa is an individual residing in the State of Florida.

2.    Defendant Astra Tech, Inc. ("Astra Tech") is a foreign corporation having its principal place of business at 590 Lincoln Street, Waltham, County of Middlesex, Commonwealth of Massachusetts.

3.    Defendant Joe Johnson is an individual residing in the State of Florida and is employed by Astra Tech.

4.    Defendant Steve Cyr is an individual residing the in the Commonwealth of Massachusetts and is employed by Astra Tech.

5.    Ms. Siupa has timely filed a claim for sexual harassment and retaliation with the Massachusetts Commission against Discrimination against Defendants, received her right to sue letter, and timely filed this complaint.

6.    On or about August 22, 2005, Astra Tech mailed an offer letter to Ms. Siupa at her then residence in Georgia. In the letter, Astra Tech offered Ms. Siupa the position of Direct Sales Manger with Astra Tech. This position was based out of Boca Raton, Florida and encompassed the territory of Ft. Lauderdale, Florida. Ms. Siupa was to receive a base salary of

$75,000.00 per year, but was provided with a base salary of only $65,000. In addition, Ms. Siupa was to receive other compensation, including that available under Astra Tech Incentive Plan, which was based, in part, on employee performance.

7. Ms. Siupa accepted the offer of employment and initially reported to Wyatt Epps. Thereafter, Astra Tech restructured its regions and Defendant Johnson was promoted from Orlando District Manager to Florida Regional Manager in January of 2006. In that position, Defendant Johnson was Ms. Siupa's direct supervisor.

8. In her training class at Astra Tech, Carl Uthus, the Vice President of Sales, told Ms. Siupa that the "Rookie of the Year" award would not be based on dollar growth, as that would be unfair to the reps with a new or neglected territories. The trainees, including Ms. Siupa, were told that this award would be based on overall volume growth, as that was the only fair way to measure all District Manager territories equally.

9. For 2006, Ms. Siupa finished the year at 173% to quota, which resulted in a 1285.7% increase in overall volume growth. This was the largest volume growth in the Florida region (and possibly in the entire company) that year. Despite this performance, Ms. Siupa was neither nominated for nor recognized as the "Rookie of the Year." Instead, Tenley Hart, (apparently Joe Johnson's favorite manager) was nominated for "Rookie of the Year" after finishing at only 91% to quota with only 143.5% overall volume growth. Ellen Walsh won "Rookie of the Year" finishing at 102% to quota and with 143.5% overall volume growth. Prior to the announcement of the award, everyone, including Ms. Walsh, congratulated Ms. Siupa because they all believed that she would win the award.

10. Ms. Siupa's first year turned out to be her most profitable year, as her compensation was approximately $117,000.

11. While performing her duties, Ms. Siupa became concerned about discussions in her territory by doctor-clients and sales representatives from other companies concerning an Astra Tech sales representative who was having sex with her accounts to generate business. On August 7, 2007, Ms. Siupa reported the information that she had regarding the representative in

2

question to Defendant Johnson and requested that a formal report be placed into her file to document the fact that she had brought this matter to his attention. Despite several requests for a copy of this documentation, no such report was ever produced to Ms. Siupa. Thus, Ms. Siupa alleges that this instance of a hostile working environment went unreported and not acted upon by Defendants.

12. On October 19, 2007, Ms. Siupa attended an Astra Tech dinner function in Boston. Ms. Siupa was sitting between Pat Francis and Alex Duke, who were also Astra Tech sales representatives. At that dinner, Pat Francis said aloud: "Alex [Duke] gives [VP of Sales] Carl Uthus blow jobs" and that was the reason Ms. Duke won an award. Mr. Francis also claimed that Ms. Siupa "was having a relationship with a DM [District Manager] from Texas" and stated that Ms. Siupa "looked pregnant."

13. On October 23, 2007, Defendant Johnson e-mailed Ms. Siupa to discuss the October 19 meeting. However, he did not inquire about Mr. Francis' offensive statements, but rather about Ms. Siupa's perceived challenge to Johnson's co-travel schedule. Ms. Siupa e-mailed Mr. Johnson that same day to explain:

> I simply asked if we were going to have a regional meeting outside of Sanford, FL. You answered the question and referenced how much you travel. I made a "joke" saying that that wasn't what it says in Salesforce [a newly instituted computer program at Astra Tech]. Everyone at our table, including Theresa, knows that Salesforce has been very inaccurate in its reports; ESPECIALLY with your co-travels. That was the reason why it was a joke. I also clarified that it was a joke to you and the table when it appeared that you were taking me seriously. I have personally entered co-travels with you up to three times that still did not run on your monthly reports.

14. Ms. Siupa then apologized twice for any misunderstanding. Defendant Johnson immediately wrote back stating in his e-mail: "I appreciate the fact you were joking and I know [Salesforce] has been an issue with accuracy." He also invited Ms. Siupa to "talk more about it

3

tomorrow" which Ms. Siupa welcomed since it would have given her a chance to discuss Mr. Francis' sexual harassment.

15. Ms. Siupa met with Defendant Johnson on October 25, 2007 in Boca Raton at approximately 11:20 a.m. Defendant Johnson's opinion of his initial e-mail was that it "was no big deal" and that they did not have to discuss it. Then, pursuant to Astra Tech's sexual harassment policy, Ms. Siupa reported Mr. Francis' offensive statements, telling Mr. Johnson that they were inappropriate and harassing, especially given the fact that the statements were made at a mandatory company dinner.

16. Contrary to the Astra Tech policy, Defendant Joe Johnson did not report Mr. Francis' sexual harassment of two Astra Tech employees, including Ms. Siupa.

17. On or about January 6, 2008, Astra Tech had a National Sales Meeting in Dallas. A company dinner was held at the Austin Ranch. Ms. Siupa was standing next to Ms. Duke when they were approached by Mr. Francis who stated: "Thanks for running the bus over me" or words to like effect. Mr. Francis then, in a threatening tone, told Ms. Siupa that she "needed to realize who her friends were" and that she should be a lot nicer to him. Instead of being information that Mr. Francis was, at least, reprimanded for his offensive comments, Ms. Siupa learned later that same night that Mr. Francis had just been given "a nice raise by JJ [Defendant Johnson]."

18. On January 15, 2008 and despite the fact that no action had been taken against Mr. Francis, Ms. Siupa reported Mr. Francis' January 6 threats to Defendant Johnson. Later that night, Joe Johnson sent an e-mail to the entire region telling his representatives that the "gossip mill" was driving him crazy, referencing "many situations that have been handled quietly on a regional level" and bragging that he had contacted each person who was experiencing problems and that he had "discussed the situation in a private, professional manner." He specifically ordered that, if any of the individuals reporting to him had "an issue with another DM/RM, me or any other person let me know and I will address it with you."

19. On January 17, 2008, Joe Johnson sent an e-mail to Ms. Siupa stating:

4

> The comments you have brought to my attention are very serious. I have addressed them with appropriate parties. The parties have denied making these comments. They have been informed that whoever made the comments it is inappropriate and the organization will not tolerate such comments and appropriate action will be taken if such comments are validated. Moving forward if you hear of comments like this again please bring them to my attention. The organization takes these matters very seriously. If it is determined that parties are falsifying information and or spreading rumors in any way appropriate action will be taken.

However, Defendant Johnson did not, at that time, inform Ms. Siupa about his "investigation" or it results.

20. On March 6, 2008, Defendant Johnson imposed only upon Ms. Siupa a "Performance Improvement Plan," which required her "to hit 70% or higher of your quota within the next three month period." During the next two months, Ms. Siupa exceeded the 70% target twice. For March 2008, Ms. Siupa hit 141% of her quota. For May 2008, Ms. Siupa hit 189% of her quota, which was the best performance for that month for the entire company.

21. On June 2, 2008, Joe Johnson informed Ms. Siupa that she was no longer on probation. That same day, Joe Johnson took the unusual step of directly contacting one of Ms. Siupa's clients, creating some confusion because the client was used to dealing directly with Ms. Siupa.

22. On June 2, 2008, Defendant Cyr called Ms. Siupa to accuse her of stating that a District Manager had a "crush" on her manager. When Ms. Siupa asked for specifics, Defendant Cyr declined to provide any. The next day, June 3, 2008, Defendant caused to be prepared a written memorandum "re: Unprofessional communications" and informed Ms. Siupa that it would be placed in her personnel file, and which was copied to the Director of Clinical Sales – West, Defendant Johnson, and to Anne Dulong in Human Resources.

5

23. On June 5, 2008, Ms. Siupa politely requested that Joe Johnson refrain from directly contacting her accounts without her knowledge, citing the potential for confusion.

24. On June 6, 2008, Ms. Siupa sent Defendant an e-mail regarding the June 3 memorandum. In that e-mail, Ms. Siupa told Defendant Cyr: "I am still unaware of what I am accused of saying, where I said these things, when exactly I said these things and to who I supposedly said something to."

25. On June 13, 2008, Defendant Cyr informed Ms. Siupa that one of her clients, Dr. Rimer, no longer wanted to work with her. This came as quite a shock because Dr. Rimer had just asked Ms. Siupa to sell some safaris for him, and had invited Ms. Siupa to attend these safaris. In fact, the last time Ms. Siupa saw Dr. Rimer, he hugged her and kissed her on the cheek, and told her that if she could find ten people to attend the next safari, she could go along for no charge. Defendant Johnson actually observed this exchange.

26. On October 13, 2008, Ms. Siupa told Defendant Cyr of her concerns that Defendant Johnson was retaliating against her for her earlier reports of sexual harassment. Defendant Cyr caused to be prepared an October 30, 2008 memorandum that stated that you could not find evidence of retaliation, but did find that the relationship between Defendant Johnson and Ms. Siupa was "tense."

27. For 2008, and despite the harassment and interference with her work, Ms. Siupa finished the year at 102% to quota, with a 56% volume growth. The next closest rep was at 85% to quota.

28. For 2009, Astra Tech reduced its quotas for sales representatives to reflect the foreseeable consequences of a poor economy. However, Defendant Johnson reduced the quotas of other reps by $200,000, Mr. Johnson only reduced Ms. Siupa's quota by $30,000.00. On April 23, 2009, Ms. Siupa asked Mr. Johnson how the quotas were assigned and Mr. Johnson became angry and did not explain how he assigned the quotas or why Ms. Siupa was treated in such a disparate manner.

29. In January 2009, another District Manager told Ms. Siupa that she was afraid to co-travel with Craig Rodriquez, who, at that time, was the VP of Marketing for Astra Tech, because he had made a lewd comment about her in front of her laboratory client; Mr. Rodriquez said that he wanted to see the District Manager on a "stripper pole." She told Ms. Siupa that she reported the comment made by Mr. Rodriquez to her manager, and his texted reply was "Yikes." However, there were no reports filed about this obvious incident of sexual harassment and no action taken against Mr. Rodriquez for his blatantly sexual comments and actions.

30. On April 23, 2009, Ms. Siupa spoke with Defendant Johnson and confirmed that she would be attending an optional "study club" meeting on April 24. However, Ms. Siupa -- later the same night -- recalled a personal appointment, and entered four hours of sick time into the company's online system, Employease (which were approved by Defendant Johnson) and sent a confirmatory e-mail to Mr. Johnson stating that she would be out the morning of April 24, to which Mr. Johnson responded, "thanks for the heads up." Thereafter, Ms. Siupa contacted Defendant Cyr and left a message stating that she needed to discuss Defendant Johnson's retaliation against her. Instead of discussing this issue with Ms. Siupa, Defendant Cyr terminated her employment, as set forth below.

31. On April 29, 2009, Defendant Cyr called Ms. Siupa and asked why she missed -- on a day that she took four hours of approved sick time -- "an important meeting." At approximately 4:30 p.m., Defendant Cyr initiated a conference call with Defendant Johnson and Ms. Siupa terminating Ms. Siupa's employment.

## COUNT I

### Hostile Working Environment/Sexual Harassment and Retaliation Against All Defendants

32. Ms. Siupa re-alleges and incorporates by reference herein the allegations set forth set forth above.

33. Based on the foregoing conduct, Defendants willfully violated M.G.L. ch. 151B, § 4(1), M.G.L. ch. 214, § 1C, ch. 93, § 102, M.G.L. ch. 12, § 111 and 42 U. S. C. § 2000(e)-2(a).

7

WHEREFORE, Ms. Siupa, demands judgment against Defendants with back pay, interest, cost and reasonable attorneys' fees.

## COUNT II

### Intentional Infliction of Emotional Distress Against All Defendants

34.  Ms. Siupa re-alleges and incorporates by reference herein the allegations set forth set forth above.

35.  During the course of Ms. Siupa's employment, as set forth above, and continuing until Ms. Siupa's wrongful termination, Defendants did continually sexually harass Ms. Siupa, allow Ms. Siupa to be sexually harassed, created a hostile working environment, allowed a hostile working environment to exist, and/or retaliated against Ms. Siupa for her complaints of sexual harassment.

36.  Such acts on the part of the Defendants were done intentionally, maliciously and while in the course of their agency, servitude, and/or employment with Astra Tech and such acts were ratified by Astra Tech.

37.  Defendants' extreme and outrageous conduct was done intentionally and without privilege.

38.  As a direct and proximate result of said intentional and malicious acts, Ms. Siupa was caused to feel oppressed, intimidated and suffered severe emotional distress incurred great mental and physical anguish, anxiety, nervousness, embarrassment and suffered severe emotional distress.

WHEREFORE, Ms. Siupa, demands judgment against the Defendants for damages including cost and reasonable attorneys' fees.

## COUNT III

### Wages Owed

39. Ms. Siupa re-alleges and incorporates by reference herein the allegations set forth set forth above.

40. Defendant Astra-Tech failed to pay Ms. Siupa her base salary of $75,000, instead paying her $65,000.

41. Defendant's conduct breached the agreement it had to pay Ms. Siupa.

42. As a direct and proximate result of Defendant's breach, Ms. Siupa has sustained damages in excess of $30,000.

WHEREFORE, Ms. Siupa requests that judgment be entered against Defendant Astra-Tech, in the amount according to proof, plus interest and costs.

Plaintiff CHEVONNE SIPUA,

By her attorney,

E.P. Michael Karcis (BBO #636153)
P.O. Box 1185
Attleboro, MA 02703
508-212-2142

Dated: February 11, 2010

9