UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHEVONNE SIUPA, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 10-10525-LTS ) |
| ASTRA TECH, INC., et al., | ) ) |
| Defendants. | ) ) ) |

ORDER REGARDING PLAINTIFF'S COUNSEL'S PRO HAC VICE STATUS

December 18, 2012

SOROKIN, C.M.J.

Sometimes a person's response to his conduct is more grievous than the conduct itself. That is the case here, where attorney Jeffrey Ryan faces revocation of his pro hac vice admission to practice before this Court not simply because he engaged in improper behavior during his client's deposition, but because at every point thereafter his actions have exacerbated, rather than mitigated, the seriousness of his initial lapse in judgment. And, this is the second time Mr. Ryan has knowingly misled the Court.

I.  BACKGROUND

On October 24, 2012, at a hearing regarding other discovery matters, defense counsel moved for discovery sanctions, alleging that Mr. Ryan had passed a note to his client while she was answering a question during her deposition. Defense counsel further asserted that Mr. Ryan, when confronted, untruthfully denied both that accusation and the further accusation that he had immediately turned over his notepad, hiding any writing thereon. Mr. Ryan repeated his denial at

the hearing, represented to the Court that the only writing on his pad listed the Court's address, and accused defense counsel of improperly terminating the deposition, coaching defense witnesses during previous depositions, and somehow staging the dispute about the notepad. The Court then heard testimony from the court reporter and the plaintiff.

No one sought to offer additional evidence or testimony. No one sought to continue the hearing to provide an opportunity to prepare or to gather further evidence. No one objected to the Court's proceedings.[1]

At the conclusion of the hearing, the Court denied without prejudice an oral motion to revoke Mr. Ryan's pro hac vice admission,[2] indicated defense counsel could renew the motion in writing, and stated it would "resolve" and "sort[] out" the issues. Doc. No. 92 at 84, 87. No one objected – either at the hearing or during the week thereafter – to the Court proceeding in this manner.

On October 31, 2012, the Court issued an Order granting defense counsel's request for sanctions. See generally Doc. No. 85. Based on the paper record before the Court and the testimony of the court reporter, the Court found that Mr. Ryan: provided his client a written note while she was answering a deposition question; turned the notepad face-down upon defense counsel's prompt accusation; submitted to the Court a notepad containing different (less) writing than the notepad he showed to his client at the deposition; and made a series of untruthful denials regarding this conduct both at the deposition and during the hearing. Id. at 13-14. The Court

---

[1]Although Mr. Ryan now claims the Court's examination of the court reporter was improper and evidenced bias, he interposed no such objection during the hearing.

[2]Plaintiff's counsel is a member of the California bar. Doc. No. 38-1.

imposed sanctions, including a requirement that the remainder of the plaintiff's deposition be videotaped at Mr. Ryan's expense, and ordered Mr. Ryan to show cause why his pro hac vice admission to the bar of this Court should not be revoked. Id. at 15-16. Subsequently, the Court stayed the remaining depositions pending resolution of the show cause order. Doc. No. 88.

The plaintiff now has made a voluminous show-cause submission to the Court and has moved for reconsideration. See Doc. Nos. 96, 96-1, 96-2, 96-3, 96-4, 96-5, 96-6, 96-7, 96-8; Doc. No. 100. Those filings, the preparation of the transcript of the evidentiary hearing (which was not available when the Court ruled previously), and the seriousness of the matter all warrant de novo review of the relevant facts and law. Accordingly, I now undertake such review.

II.     RECUSAL

The plaintiff suggests at various points in her show-cause submission, and again in her motion for reconsideration, that the Court holds a bias against the plaintiff and/or Mr. Ryan, and in favor of defense counsel, such that I should recuse myself pursuant to 28 U.S.C. § 455(a). See Doc. No. 96 at 11; Doc. No. 96-1 at 26, 39, 41; see also Doc. No. 100 at 6.[3] I disagree.

Recusal is required "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard for recusal is an objective one, which turns on "whether an objective, reasonable member of the public, *'fully informed of all the relevant facts*, would fairly question the trial judge's impartiality.'" In re United States, 441

---

[3]The plaintiff, in her sur-reply brief, clarifies that she has not made, nor "contemplated," a motion for recusal. Doc. No. 103 at 6-7. However, in light of her repeated allegations of partiality and an "appearance of bias," id., it is incumbent upon the Court to address the issue. See Obert v. Republic W. Ins. Co., 190 F. Supp. 2d 279, 284 (D.R.I. 2002) (noting "a judge does not have to wait and . . . should not wait until a party moves for disqualification" before considering whether recusal is appropriate).

F.3d 44, 57 (1st Cir. 2006) (quoting In re United States, 158 F.3d 26, 31 (1st Cir. 1998)) (emphasis added). "In the First Circuit, a judge has a duty to preside over a case unless probative evidence demonstrates a reasonable factual basis to doubt his . . . impartiality." Obert v. Republic W. Ins. Co., 190 F. Supp. 2d 279, 284 (D.R.I. 2002).

Under § 455(a), "the question is whether the court is biased against a party, not whether the court is annoyed with the party's counsel." Gomez v. St. Jude Med. Daig Div., Inc., 442 F.3d 919, 938-39 (5th Cir. 2006). Recusal is not warranted "[w]here . . . the charge of bias reflects nothing more than 'dissatisfaction with a Court's rulings and case management.'" United States v. Dembrowski, 2011 WL 8335172, at *3 (D. Mass. July 19, 2011) (quoting Fideicomiso De La Tierra del Cano Martin Pena v. Fortuno, 631 F. Supp. 2d 134, 137 (D.P.R. 2009)). A litigant may not "avoid adverse decisions by alleging the slightest of factual bases for bias." In re United States, 666 F.2d 690, 695 (1st Cir. 1981); see also Obert, 190 F. Supp. 2d at 286 (noting "only in the rarest case will the comments of a judge, made in the context of his or her judicial duties, constitute the basis for disqualification").

Here, the plaintiff's assertions of partiality entirely arise from disagreement with the Court's rulings, and dissatisfaction with the Court's examination and credibility assessment of the court reporter at the October 24, 2012 hearing.[4] Such matters do not amount to "a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994); accord In re Boston's Children First, 244 F.3d 164, 168 n.7 (1st Cir. 2001). After extensive review of the

---

[4]To the extent the plaintiff asserts bias based on the Court's decision, in the first instance, to undertake an inquiry into the allegations of improper behavior by Mr. Ryan at the October 24, 2012 deposition, the Code of Conduct for United States Judges requires federal judges to "take appropriate action upon learning of reliable evidence indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct." Canon 3(B)(5).

record and careful consideration of the plaintiff's allegations, I have no reservations about my ability to be fair and impartial in this case, nor would a reasonable and "fully informed" member of the public. Recusal, therefore, is not warranted.

### III. REVOCATION OF PRO HAC VICE ADMISSION

#### A. Legal Standard

Admission to practice pro hac vice before this Court is governed by Local Rule 83.5.3(b). The rule provides that it is "in the discretion of the court" to determine whether an attorney from another jurisdiction may appear pro hac vice in a particular matter. It also requires such attorneys to be familiar with the Local Rules, which include provisions mandating compliance with ethical requirements adopted by the Supreme Judicial Court of Massachusetts ("SJC"). See Local Rule 83.5.3(b); Local Rule 83.6(4) (requiring compliance with SJC Rule 3:07, i.e., the Massachusetts Rules of Professional Conduct). In Massachusetts, like virtually every other state, attorneys are ethically bound to act with candor toward the tribunal, fairness toward opposing counsel, and truthfulness in statements to others. See Mass. Rules of Prof'l Conduct R. 3.3, 3.4, 4.1.

"Pro hac vice admission is generally considered a privilege and not a right." Obert, 190 F. Supp. 2d at 298. A court has discretion to deny pro hac vice admission in the first instance, see Pease v. Burns, 679 F. Supp. 2d 161, 164-65 (D. Mass. 2010), and also is empowered to "regulate the conduct" of attorneys admitted on a pro hac vice basis, see United States v. Panzardi Alvarez, 816 F.2d 813, 817 (1st Cir. 1987). Consistent with such power, and with the discretionary nature of admission pursuant to Local Rule 83.5.3(b), courts have disqualified attorneys and revoked pro hac vice admission as a sanction for improper or unethical conduct. See, e.g., Obert, 190 F. Supp. 2d at 298-99. There are, however, "no national standards" on

disqualification of pro hac vice counsel, whether and to what limited extent an attorney has a property right in retaining pro hac vice status after it has been granted, or what level of procedural due process is required before revocation of pro hac vice admission.[5]  Id.

To date, the First Circuit has set no guidelines for resolving such questions in this jurisdiction.  As the plaintiff notes, the Third Circuit has concluded "that some type of notice and an opportunity to respond are necessary when a district court seeks to revoke an attorney's pro hac vice status."  Johnson v. Trueblood, 629 F.2d 302, 303 (3d Cir. 1980); accord Taberer v. Armstrong World Indus., Inc., 954 F.2d 888, 910 (3d Cir. 1992); see Obert, 190 F. Supp. 2d at 299.  Notice in this context is satisfied by identifying "the conduct of the attorney that is the subject of the inquiry, and the specific reason this conduct may justify revocation."  Johnson, 629 F.2d at 304 (further observing that "a violation of any disciplinary standard applicable to members of the bar of the court would justify revocation of pro hac vice status").  After notice is given, the attorney should receive a "meaningful opportunity to respond to [the] identified charges."  Id. (also concluding that "a full scale hearing is not required in every case").  Finally, the court should "give written reasons for any revocation."  Id.  The Third Circuit's discussion is instructive, and this Court will apply its general guidelines here.  See Obert, 190 F. Supp. 2d at 299.

The October 31, 2012 Order of this Court provided the plaintiff and Mr. Ryan with notice

---

[5]The plaintiff recites standards applicable to disbarment proceedings, where clear and convincing evidence is required.  See Doc. No. 96 at 2-4.  Although serious, revocation of pro hac vice admission is qualitatively, and meaningfully, different from disbarment of an attorney in a jurisdiction where he is licensed to practice.  As such, the standard of proof and level of process required in such proceedings is not appropriate here, and the plaintiff has cited no case applying those standards in a context such as this.

of the conduct at issue, the local ethical rules it implicated, the Court's view of the evidence adduced during the October 24, 2012 hearing, and the Court's intention to consider whether revocation of Mr. Ryan's pro hac vice admission was necessary.  See generally Doc. No. 85. Any applicable notice requirement, therefore, has been satisfied.

Rather than simply disqualifying Mr. Ryan at that time, the Court allowed two weeks for him to address the identified charges.  Id. at 15-16.  The Court then granted Mr. Ryan an additional week to prepare his response.  Doc. No. 94.  The response Mr. Ryan filed totaled more than one hundred pages, including a brief, three declarations, and numerous exhibits.  See generally Doc. No. 96.  The response does not contain a request for a further evidentiary hearing.[6]  Id.  After the defendants responded to the show-cause submission, the plaintiff filed a sur-reply brief.  Doc. No. 103.  In light of the evidence adduced at the October 24, 2012 hearing, and the extensive submissions by the plaintiff in response to the show-cause order, the Court finds no further hearing is necessary as a practical matter, nor is it constitutionally required.  See Johnson, 629 F.2d at 304.

The Court will rule based upon the entire record, which the Court has reviewed de novo. Specifically, the Court has read the plaintiff's show-cause submission, including all exhibits and supporting documents, the plaintiff's sur-reply, the October 31, 2012 order, the transcript of the evidentiary hearing, the two-part transcript of the plaintiff's October 24, 2012 deposition, and the record in this case.

---

[6]Insofar as the plaintiff's submission implicitly seeks a further hearing, it fails to identify any evidence or arguments, beyond those presented during the previous hearing and in Mr. Ryan's submissions, that would be proffered during such further hearing.

B.     Factual Findings

Turning to the merits, the Court finds the following facts, based on its exhaustive, de novo review. These findings of fact are supported by the record in this case, including the plaintiff's previous filings that appear on the docket, and the credible testimony of court reporter Deborah Rumson at the October 24, 2012 hearing. Whether or not required, as the plaintiff suggests, the Court is satisfied that all of its factual findings are supported by clear and convincing evidence.

1.     *Previous Lack of Candor and Disregard for a Court Order*

The incident during the plaintiff's deposition in October was not the first instance of troubling conduct by Mr. Ryan in this case. Shortly after his admission pro hac vice, Mr. Ryan showed a proposed amended complaint to defense counsel. Defense counsel assented to the changes. Mr. Ryan filed an Assented-To Motion for Leave to File an Amended Complaint, Doc. No. 42, to which he attached the draft shown to defense counsel, Doc. No. 42-1. The Court allowed the motion and directed that "Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted." Electronic Order dated 11/30/2011. Mr. Ryan docketed a document entitled "First Amended Complaint" the same day. Doc. No. 43. This complaint differed materially from the draft shown to defense counsel and submitted to the Court with the motion. Compare Doc. No. 42-1 (containing 48 paragraphs and no explicit jury demand in the caption), with Doc. No. 43 (containing 49 paragraphs and adding a jury demand to the caption); see also Doc. No. 53.

Mr. Ryan neither sought permission for the version of the amended complaint he filed, nor did he notify defense counsel or the Court of the alteration he had made to the version

previously disclosed. When defense counsel filed a motion seeking to "correct" the amended complaint as filed so that it would conform to the amended complaint as approved by the Court, Mr. Ryan opposed the motion. Nowhere in his opposition did he admit or even discuss what had happened, except to accuse the defendants of "quibbl[ing] with the inclusion of an *express* demand for jury trial." Doc. No. 57 at 1 (emphasis in original).

The Court now finds as follows: (1) the amended complaint as filed differed materially from the amended complaint shown to defense counsel and approved by the Court in that it contained a jury demand; (2) Mr. Ryan knowingly and intentionally disobeyed the Court's order to file the amended complaint as approved; and (3) Mr. Ryan did so in an effort to attempt to gain advantage in the litigation by passing off the amended complaint he filed as if it were the amended complaint the Court had approved. Mr. Ryan's statements at a July 16, 2012 status conference, at which the matter was discussed, support the Court's findings:[7]

> I apologize to the Court and to Ms. Kramer on that. . . . I should have picked up the phone and I should have contacted Ms. Kramer rather than just sticking it in there, and I do apologize.
>
> \*     \*     \*
>
> I did not realize until just before we were filing [the amended complaint] that it did not have a demand for a jury trial. I was looking over it one last time and I see that it wasn't in there[, that's] when I put it in . . . .

Doc. No. 74 at 20, 24.

    2.    *The Untruthful Statements at and after the Deposition*

The incident that directly resulted in the October 24, 2012 hearing and the October 31,

---

[7]The Court has reviewed both the written transcript and the audio recording of the July 16, 2012 status conference.

2012 show-cause order occurred during the plaintiff's deposition. The evidence and arguments related to that incident are detailed in the Court's October 31, 2012 Order. See Doc. No. 85 at 7-12. As to that occurrence, the Court makes the following factual findings:

(1) The plaintiff's deposition began at 9:32 a.m. on October 24th. Doc. No. 81 at 1.

(2) Just after 10:00 a.m., defense counsel asked the plaintiff about an apparent omission in her response to an interrogatory. Id. at 4.

(3) The plaintiff struggled to respond, pausing several times and taking more than one full minute to complete her answer. Id. at 4-5.[8]

(4) While the plaintiff was responding, Mr. Ryan wrote something on his notepad and pushed it toward his client. See id. at 5; Doc. No. 92 at 54, 60-61.

(5) When defense counsel stated, "Mr. Ryan is writing notes to his client while she is answering a question," Doc. No. 81 at 5, Mr. Ryan turned his notepad over so that the page with writing was facing down, Doc. No. 92 at 54.

(6) Defense counsel suggested that Mr. Ryan could disprove her accusation by showing the notepad to her. Doc. No. 81 at 5.

(7) Mr. Ryan falsely denied having written anything and having turned his notepad face-down, and he refused to show his notepad to defense counsel at that time. Id. at 5-6.

(8) That afternoon, during a hearing before this Court, Mr. Ryan showed the Court a notepad containing only the courthouse address and falsely represented that it was

---

[8]The full text of the question and answer was excerpted in note 5 to the Court's October 31, 2012 Order. Doc. No. 85 at 7.

the same writing that had been on the notepad during the deposition. Doc. No. 92 at 38; see id. at 65-68 (court reporter testified the notepad had contained more writing just before it was turned over).

C.   Analysis

Based on the factual findings enumerated above, the Court concludes Mr. Ryan has violated the Massachusetts Rules of Professional Conduct by lying to opposing counsel, misrepresenting facts to the Court, and knowingly offering falsified evidence (i.e., the notepad) during an evidentiary hearing. See Mass. Rules of Prof'l Conduct R. 3.3(a)(1), (4); 3.4(a), (b); 4.1(a). Such violations justify revocation of Mr. Ryan's pro hac vice status, especially in light of Mr. Ryan's prior lack of candor. Johnson, 629 F.2d at 304; see Obert, 190 F. Supp. 2d at 300.

Nothing in Mr. Ryan's show-cause response or the plaintiff's sur-reply changes this conclusion. The bulk of the response and its supporting documents are aimed at disputing the Court's factual findings. These arguments are unpersuasive. Nonetheless, several points raised by Mr. Ryan warrant brief discussion.

First, Mr. Ryan expends substantial effort – and the bulk of his declaration – attacking the credibility of Ms. Rumson, the court reporter who was a witness to his deposition misconduct and testified at the October 24, 2012 hearing. For example, he suggests Ms. Rumson skewed her testimony to favor her "friend and longtime patron" (i.e., defense counsel). See Doc. No. 96-1 at 3, 19, 34. The record, however, is devoid of evidence suggesting Ms. Rumson held any bias in favor of defense counsel.[9] Moreover, the court observed Ms. Rumson and heard her testify live

---

[9]Mr. Ryan had ample opportunity to question Ms. Rumson about her relationship with defense counsel and chose not to do so. In addition, despite Mr. Ryan's assertions to the contrary, it appears Ms. Rumson did, in fact, appear at the hearing and testify pursuant to a

during the hearing, listened to the complete audio recording of her testimony after the hearing, and reviewed the official transcript thereof after receiving Mr. Ryan's show-cause response. After this thorough review and repeated consideration of Ms. Rumson's account, the Court finds no basis to doubt her truthfulness.[10]

Second, Mr. Ryan endeavors to catalogue facts about which Ms. Rumson "changed her story" during her testimony. See id. at 29-47. According to Mr. Ryan, Ms. Rumson offered different "versions" of how many notes she saw on Mr. Ryan's notepad, to whom Mr. Ryan showed the notepad after the deposition was suspended, and whether Mr. Ryan moved conference room chairs before the deposition started. Id. The Court does not share Mr. Ryan's view of the hearing testimony. Rather, the Court finds Ms. Rumson testified clearly and consistently. The "versions" identified by Mr. Ryan are attributable not to changes in her story, but to the fact that she began her testimony with a broad summary of events, then provided additional detail in response to specific questions by the attorneys and the Court. As such, the Court credits Ms. Rumson's testimony in its entirety.

Third, Mr. Ryan points to his client's sworn statements – both her testimony at the evidentiary hearing and a declaration submitted in support of his show-cause response – as support for his account of what transpired at the deposition. See Doc. No. 96 at 8; Doc. No. 96-1

---

subpoena. See Doc. No. 102-2.

[10]The polygraph results offered by Mr. Ryan are entitled to little, if any, weight for several reasons. The information is offered primarily through Mr. Ryan's own account of the test, and without any sworn statement by the examiner. In addition, the only questions asked during the test were questions Mr. Ryan had reviewed and approved in advance. Doc. No. 96-3 at 5. Furthermore, courts have long been skeptical of the reliability and probative value of polygraph results. Devries v. St. Paul Fire & Marine Ins. Co., 716 F.2d 939, 944-45 (1st Cir. 1983); accord United States v. Rodriguez-Berrios, 573 F.3d 55, 73 (1st Cir. 2009).

at 3, 15-16, 18, 29, 36-40.  At the hearing, which was held only hours after the incident at her deposition, the plaintiff testified she did not look at Mr. Ryan's notepad during her testimony to see what was written there.  Doc. No. 92 at 73-74.  She further testified she was "taken aback and in shock" when defense counsel ended the deposition, and that thereafter she was focused on an incident involving her purse and "ha[d] no idea" what Mr. Ryan took with him when he left the room at that time.  Id. at 75.  In these respects (which neither support nor undermine the critical portions of Mr. Ryan's account), the Court finds the plaintiff's testimony credible.  To the extent the plaintiff's declaration, executed several weeks after the events at issue, is inconsistent with her hearing testimony, the Court credits the latter, which was given when the events were fresh in her mind.  Compare Doc. No. 92 at 73-74 (stating she did not see what was on the notepad because she was focused on her deposition testimony), with Doc. No. 96-4 at ¶¶ 2-3 (declaring she "looked at the notepad," which "never" contained "a second note . . . at any time").  To the extent the plaintiff's hearing testimony was inconsistent with Ms. Rumson's testimony, the Court credits Ms. Rumson, who was a credible and impartial third-party witness.

Fourth, Mr. Ryan claims the factual findings included in the October 31, 2012 Order were based on "pure speculation" and "unreasonable inferences."  See Doc. No. 96 at 8-9; see also Doc. No. 100 at 5 (arguing the Court's findings were based on "non-facts").  However, Ms. Rumson's testimony supports each factual finding enumerated above – and those contained in the Court's prior Order – regarding Mr. Ryan's conduct during the October 24, 2012 deposition.  In light of the Court's decision to credit her account, the findings of fact are based on competent evidence, i.e., live, sworn testimony given by an impartial, credible witness.  They also are based

on Mr. Ryan's own statements in pleadings and hearing transcripts contained in the record.[11]

Fifth, the portions of Mr. Ryan's response that do not focus on Ms. Rumson's credibility are dedicated to alleging misconduct by defense counsel. See Doc. No. 96-1 at 48-51; see generally Doc. No. 96. By persisting in such arguments, Mr. Ryan ignores a basic principle which the Court emphasized during the October 24, 2012 hearing: alleged misconduct by defense counsel does not justify misconduct by Mr. Ryan. Moreover, although the excerpts Mr. Ryan has provided from other depositions arguably include some improper speaking objections by defense counsel, none of them support the serious allegations Mr. Ryan has levied (e.g., repeatedly writing notes to deponents while questions are pending, whispering answers in deponents' ears, etc.). And as to the termination of the plaintiff's deposition, the Court finds no violation of Rule 30 where defense counsel believed – and the Court has now found – that Mr. Ryan was engaging in conduct that undermined the reliability of the proceedings, and which warranted court intervention. See Fed. R. Civ. P. 30(d)(3)(A) (party may suspend deposition until motion filed and court order is obtained to address bad faith conduct).

Finally, Mr. Ryan makes almost no argument whatsoever regarding why the Court's findings should not result in disqualification. He does assert – in two sentences in the penultimate paragraph of the conclusion section of his response, almost as an afterthought – that "the Court [should] consider that his client has no other counsel." Doc. No. 96 at 15; see also Doc. No. 96-4 at ¶ 4 (declaration of the plaintiff summarily asserting that "it will be impossible" to get new counsel). He amplifies this point, to some degree, in his sur-reply by reference to

---

[11] Contrary to Mr. Ryan's apparent belief, the Court has not "rel[ied] on [defense counsel's] word as evidence of [Mr. Ryan's] misconduct." Doc. No. 103 at 6.

cases instructing that the court should weigh the affect disqualification of counsel has on the client. See Doc. No. 103 at 2-3. Although it is true that the plaintiff will suffer some hardship (through no fault of her own) as a result of Mr. Ryan's disqualification, that consideration is not sufficient to mitigate the flagrant ethical violations the Court has found Mr. Ryan committed. See Obert, 190 F. Supp. 2d at 298 (noting a civil plaintiff "has no constitutional right to counsel of [her] choice"). Moreover, there are many skilled and experienced employment discrimination lawyers in Massachusetts who regularly handle cases such as the plaintiff's – at least some of whom do so on a contingency fee basis. Besides a vague averment in the plaintiff's declaration, Doc. No. 96-4 at ¶ 4, there is nothing before the Court demonstrating the plaintiff cannot secure other counsel.

Accordingly, Mr. Ryan's pro hac vice status in this case is hereby REVOKED. Discovery in this matter will remain stayed for forty-five days, until February 1, 2013, to afford the plaintiff an opportunity to locate replacement counsel.[12]

IV.     MOTION FOR RECONSIDERATION

For all of the foregoing reasons, and after careful review of the record including the plaintiff's submissions and the transcript of the October 24, 2012 hearing, the plaintiff's Motion for Reconsideration (docket # 100) is DENIED. The sanctions imposed in the October 31, 2012 Order are justified in light of the Court's findings regarding plaintiff's counsel's conduct, and are

---

[12]Although the plaintiff currently has local counsel, that attorney is unable to take on the responsibilities of lead counsel in this matter. See Doc. Nos. 89, 95.

within the Court's power to impose *on plaintiff's counsel* pursuant to Fed. R. Civ. P. 30(d)(2) and 18 U.S.C. § 1927.

SO ORDERED.

    /s / Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE